**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| EQUITABLE ADVISORS, LLC | ) | |
| | ) | |
| | ) | Civil No. |
| Plaintiff, | ) | |
| vs. | ) | **COMPLAINT IN** |
| | ) | **INTERPLEADER** |
| CHRISTOPER J. GORDON, individually and | ) | |
| in his representative capacity as co-trustee of | ) | |
| THE LINDA M. KAHN 2015 REVOCABLE | ) | |
| TRUST, JO ANN WEINSTEIN, in her | ) | |
| representative capacity as co-trustee of THE | ) | |
| LINDA M. KAHN 2015 REVOCABLE | ) | |
| TRUST, JASON REISCH, DANIEL | ) | |
| REISCH, NAAMA ASHTAMKER, ALON | ) | |
| MALICHI, and NAOR MALICHI | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Equitable Advisors, LLC ("Equitable"), by and through its attorneys, for its Complaint in Interpleader, alleges as follows:

**PARTIES**

1.     Equitable is a Delaware limited liability company with its principal place of business in New York. Equitable is duly authorized to do business in the State of New York.

2.     Upon information and belief, Defendant Christopher J. Gordon ("Christopher") was the husband of Linda M. Kahn ("Linda") and is an adult citizen of New York domiciled in New York, New York, who, upon her death, became a co-trustee of The Linda M. Kahn 2015 Revocable Trust (the "Trust") and is named herein both individually and in his representative capacity as co-trustee of the Trust ("Co-Trustee").

3.     Upon information and belief, Defendant Jo Ann Weinstein ("Jo Ann") was Linda's friend and is an adult citizen of Colorado domiciled in Littleton, Colorado, who, upon her death, became a Co-Trustee and is named herein in her representative capacity as Co-Trustee.

4.      Upon information and belief, Defendant Jason Reisch is Linda's nephew and an adult citizen of Virginia domiciled in Alexandria, Virginia.

5.      Upon information and belief, Defendant Daniel Reisch is Linda's nephew and an adult citizen of Washington, D.C. domiciled in Washington, D.C.

6.      Upon information and belief, Defendant Naama Ashtamkar is Linda's niece and Defendants Alon Malichi and Naor Malichi are Linda's nephews and reside outside of the United States. Defendants Naama Ashtamkar and Naor Malichi are adult citizens of Israel.

7.      Alon Malichi currently has no permanent address and is in the process of moving to Israel.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction under 28 U.S.C. § 1335 in that the Defendants are of diverse citizenship and the amount in controversy exceeds $500.00. There is minimal diversity between the claimants under State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523 (1967). Upon information and belief, the defendants are citizens of New York, Colorado, Virginia, Washington, D.C., and Israel.

9.      Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1397 because one or more of the claimants resides in this judicial district.

## CAUSE OF ACTION IN INTERPLEADER

10.     The Trust was established on March 11, 2015, through an agreement naming Linda as Trustee and Christopher and Jo Ann as Co-Trustees upon Linda's death or incapacity. The Trust provided, among other things, that Linda could use the income and principal of the Trust for any

purpose during her lifetime and that upon her death and after the contribution of certain funds to a charitable organization selected in the discretion of the Co-Trustees, any remaining property of the Trust would be distributed to her niece and nephews, Defendants Jason Reisch, Daniel Reisch, Naama Ashtamker, Alon Malichi, and Naor Malichi (the "Niece and Nephews"). The Trust agreement was amended and restated on April 3, 2020 to, among other things, decrease the distributions to the charitable organization, but no changes were made to the designations of the Co-Trustees or the distributions to the Niece and Nephews. *A copy of the First Amendment and Restatement of the Trust dated April 3, 2020 is attached hereto as* **Exhibit A.**

11.     By LPL Advisory – Non-Retirement Account Application dated April 22, 2015, Linda, as Trustee of the Trust, applied to open Strategic Asset Management Account No. 3738-3710 ("Account 710") in the name of the Trust. *A copy of the Application for Account 710 dated April 22, 2015 is attached hereto as* **Exhibit B.**

12.     Equitable opened Account 710 and on occasion, Linda would withdraw funds from Account 710 for, among other things, her personal use.

13.     After Linda's death, her estate attorney advised Equitable that in or around 2020, Linda had met with her estate attorney to inquire as to how best to provide for her husband in the event of her death, including revocation of the Trust. The attorney advised that since Linda had complete discretion with respect to her use of the income and principal of the Trust, the easiest and most efficient way to provide for Christopher was to remove all assets from the Trust.

14.     On or about July 27, 2021, Linda and Christopher met with their financial advisor (the "Advisor") to discuss, among other things,

- the distribution of $30,000 in funds from an Equitable account owned by Linda individually to an account held at a bank unaffiliated with Equitable for their immediate use;

- the addition of Christopher as a joint owner of a separate Strategic Asset Management Account No. 1466-0824 ("Account 824"), which was owned by Linda individually; and

- the transfer of approximately $500,000.00 in assets from Account 710 to Linda and Christopher's joint checking account.

*A copy of the Order Sheet dated July 27, 2021 memorializing the meeting between Linda, Christopher and the Advisor is attached hereto as* **Exhibit C.**

15.     The Advisor submitted a written request for Christopher to be added as a joint owner of Account 824 and for the transfer of the $30,000 in funds to one of Linda's personal bank accounts. On July 28, 2021, $15,000 in funds was transferred from Account No. 1466-0824 ("Account 824") to a bank account owned by Linda and unaffiliated with Equitable. On July 30, 2021, another $15,000 was transferred from Account 824 to Linda's bank account.

16.     However, the Advisor did not submit a written request to transfer the additional $500,000.00 in assets from Account 710.

17.     Upon information and belief, Linda died on August 30, 2021. *A copy of Linda's death certificate is attached hereto as* **Exhibit D**.

18.     As a result of Linda's death, a death benefit which was valued at $503,372.82 as of May 10, 2022, and which amount is subject to market fluctuations (the "Death Benefit"), became due to a beneficiary or beneficiaries and Equitable concedes liability to that effect.

19.     In or around October of 2021, the Advisor met with Christopher and realized that the transfer of $500,000.00 from Account 710 had not occurred prior to her death.

20.     Subsequently, the Advisor transferred $500,000 in assets from Account 710.

21.     Because Linda was deceased, the transfer of assets should not have been made to her account.

22.     The Advisor updated Equitable's compliance department regarding the transfer to a decedent's account and reversed the transfer back to Account 710.

23.     The Advisor also updated Linda's estate attorney, Jo Ann Weinstein, and the Niece and Nephews about the transfer and its reversal. Jo Ann, as Co-Trustee, subsequently approved of the activity in Account 710 and, together with Co-Trustee Christopher, executed a form authorizing the journaling of the transfer and the reversal.

24.     The Niece and Nephews were sent disclaimers (the "Disclaimers") drafted by Linda's estate attorney acknowledging that Linda instructed the Advisor to transfer all of the assets of the Trust to her personal account for the benefit of Christopher in order to provide him with additional financial resources in light of their changed financial circumstances. By signing the Disclaimers, the Niece and Nephews acknowledged that if Linda had not revoked the Trust, they would have been entitled to a 20% share of the Trust assets and provided their authorization for the Co-Trustees of the Trust to transfer any interest that they might have in the Trust to Christopher.

25.     The Niece and Nephews all agreed to execute the Disclaimers. Defendants Jason Reisch, Daniel Reisch, Naama Ashtamker Malichi, and Naor Malichi delivered signed Disclaimers to Equitable. *Copies of the disclaimers signed by Defendants Jason Reisch, Daniel Reisch, Naama Ashtamker Malichi, and Naor Malichi are attached hereto as **Exhibit E**.*

26.     In or around January of 2022, Defendant Alon Malichi advised the Advisor's office in an email that he would forward his signed Disclaimer to Equitable upon his return from traveling abroad.

27.     Defendant Alon Malichi's signed disclaimer was never received by Equitable.

28.     On February 10, 2022, Christopher and Jo Ann Weinstein, as Co-Trustees, executed a Move Money Non-Retirement to another LPL Account (Journal) form directing the transfer of

$24,045.65 and all of the securities in Account 710 to Account No. 1266-4739 ("Account 739"), which is an investment account owned by Christopher. *A copy of the Move Money form dated February 10, 2022 is attached hereto as **Exhibit F**.*

29.     In light of the fact that Equitable was in receipt of written disclaimers from Linda's niece and three of her four nephews, on February 10, 2022, the Advisor transferred $24,045.65, representing 4/5 of the cash in Account 710, as well as 4/5 of the securities in Account 710 to Account 739. *A copy of the February 2022 Activity Statement for the Trust's Accounts recording the transfer of various securities and $24,045.65 in cash is attached hereto as **Exhibit G**.*

30.     Subsequently, Defendants Jason Reisch, Daniel Reisch, Naama Ashtamker Malichi, and Naor Malichi rescinded the authorizations which they had previously made through the Disclaimers, and as such, are asserting claims to property held by the Trust and Equitable, including the Death Benefit. Defendant Alon Malichi, who did not execute a written disclaimer after expressing his intent to do so, subsequently confirmed in writing that he would not agree to relinquish his 20% interest in the assets of the Trust. *Copies of the written rescissions made by Defendants Jason Reisch, Daniel Reisch, Naama Ashtamker, and Naor Malichi are attached hereto as **Exhibit H**. Defendant Alon Malichi's written confirmation is attached hereto as **Exhibit I**.*

31.     In or around April 2022, the Advisor updated Christopher regarding receipt of the written rescissions and returned the cash and securities to Account 710.

32.     There have been no other claims for the Death Benefit. Under the circumstances and in light of the potential or actual claims the Defendants, Equitable is or may be exposed to multiple liability.

33.     Equitable is ready, willing and able to pay or transfer the Death Benefit, plus claim interest, if any, in accordance with the terms of Account 710 to whomever this Court shall designate.

34.     As a mere stakeholder, Equitable has no interest (except to recover its attorneys' fees and cost in this action) in the Death Benefit and respectfully requests that this Court determine to whom these benefits should be paid or transferred.

35.     Equitable accordingly will deposit with or transfer to the Court the Death Benefit, plus claim interest, if any, for disbursement or distribution in accordance with the judgment of this Court, or pursuant to an Order of the Court, will pay or transfer the Death Benefit directly to whomever this Court determines to be entitled to it.

36.     There is no fraud or collusion between Equitable and any of the Defendants. Equitable brings this Complaint in Interpleader of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

**WHEREFORE**, Equitable prays that the Court enter judgment:

(a)     requiring Defendants to answer this Complaint in Interpleader and litigate their claims between themselves for the Death Benefit;

(b)     requiring the Defendants to settle and adjust between themselves, or upon their failure to do so, this Court settle and adjust the claims and determine to whom the Death Benefit should be paid or transferred;

(c)     permitting Equitable to deposit the amount of the Death Benefit, plus applicable claim interest, if any, or transfer the Death Benefit into the Court or as this Court otherwise directs;

(d)     discharging Equitable from any and all further liability to the Defendants that relate in any way to Account 710 and/or the Death Benefit upon payment or transfer of the Death Benefit into the Registry of this Court, or as otherwise directed by this Court;

(e)     enjoining the Defendants from instituting or prosecuting any proceeding in any state or United States court in connection with payment or transfer of the Death Benefit or otherwise in connection with Account 710;

(f)     awarding Equitable its attorneys' fees and costs in their entirety; and

(g)     awarding Equitable any other and further relief that this Court deems just and proper.

Respectfully Submitted,

/s/ Kimberly A. O'Toole
Kimberly A. O'Toole
*d'Arcambal Ousley & Cuyler Burk LLP*
40 Fulton Street, Suite 1501
New York, NY 10038
Tel: (212) 971-3175

*Counsel for Plaintiff Equitable Advisors, LLC*